Judgment rendered November 10, 2020.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 53,555-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

SUNSET REALTY, INC. AND                    Plaintiffs-Appellants
NORTH AMERICAN LAND
DEVELOPMENT
CORPORATION

versus

BUDDY PEARSON AND JANET                    Defendants-Appellees
PEARSON

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 20162110

Honorable Robert C. Johnson, Judge

* * * * *

JOE D. GUERRIERO, LLC                      Counsel for Appellants
By: Joe D. Guerriero

BUDDY PEARSON                              In Proper Person,
                                           Appellee

JANET PEARSON                              In Proper Person,
                                           Appellee

* * * * *

Before PITMAN, STONE and McCALLUM, JJ.

**McCALLUM, J.**

The trial court awarded Sunset Realty Inc. and North American Land Development Corporation $13,205.00 in contractual interest and $10,000.00 in attorney fees. They appeal that judgment arguing that the trial court erred in not awarding them a larger amount of $52,288.14 in contractual interest and in denying them $26,562.53 in other construction costs. Buddy Pearson and Janet Pearson have not appealed the judgment. They have also not filed a response to the appeal before us now.

FACTS

On May 8, 2015, Buddy Pearson and Janet Pearson ("the Pearsons") entered into a contract with Sunset Realty Inc. ("Sunset") and North American Land Development Corporation ("NALDC"). Under the applicable terms of the agreement, the Pearsons agreed to purchase land from Sunset as well as pay for the construction of a home to be built by NALDC. The price of the land was set at $87,712.00. However, regardless of the price of the land, the total price for the lot, house and commission was not to exceed $190.00 per square foot. With a total square footage of 2,780, the maximum price of the lot, house and commission could therefore not exceed $528,200.00. All parties agreed to a closing date of twelve months after the execution of the contract. The closing date was therefore May 8, 2016.

Important to our consideration are the following two contractual paragraphs, as follows:

> It is further understood and agreed by the parties hereto that Pearson must close on the house and lot and pay for the house and lot described hereinabove to Sunset, within twelve (12) months from the date of this agreement, in default of which NALD and/or Sunset may file in Court for specific performance

of this agreement. In addition, Sunset agrees to pay all claims of NALD in connection with the construction of said house.

If Sunset and/or NALD has to file suit to enforce this Agreement, Pearson agrees to be liable for the entire sum set forth hereinabove and also for all attorney fees incurred by NALD and/or Sunset for having to file suit to enforce this agreement.

Prior to the closing date of May 8, 2016, the Pearsons requested from Sunset and NALDC an extension period to close on the home. Sunset and NALDC agreed to extend the closing date by six months; however, they demanded certain new terms in order to agree to such an extension. By contract titled, "Amended Contractual Agreement," executed on April 11, 2016, all parties agreed to the following notable provisions:

WHEREAS, the Parties desire to amend the aforementioned paragraph to extend the time period to close on the property.

WHEREAS, the Parties hereby agree that the amended closing date on the property shall be no later than November 8, 2016.

WHEREAS, Pearson, in consideration of the aforementioned extension, agrees to pay interest at the rate of five percent (5%) per annum, from May 8, 2016 until the date of closing on the total cost of the property, including the construction costs of the house and any other costs or fees associated therewith.

WHEREAS, the Parties declare that all other provisions, not herein amended or added, remain in full force and effect.

Thereafter, the Pearsons failed to close on the house by the amended closing date of November 8, 2016. Sunset and NALDC sold the home on May 8, 2019 for $560,000.00. The realty commission costs and taxes were $25,800.00 and $2,292.42 respectively. The original price of the home for the Pearsons was $528,200.00. Therefore, Sunset and NALDC saw a profit, after realty commission costs and taxes, of $3,707.50, exceeding the maximum contractual amount with the Pearsons.

2

We do note that Sunset and NALDC filed suit against the Pearsons prior to the amended closing date. They sought specific performance and damages which the trial court denied as premature. Thereafter, Sunset and NALDC amended their petition three times and subsequent to the sale of the home, a trial was held on October 21, 2019. At trial, Sunset and NALDC acknowledged that their original cause for specific performance was not a practical solution for the court to entertain. Ultimately, Sunset and NALDC sought damages for the breach of contract by the Pearsons, including enforcement of the contractually agreed interests, attorney fees, and damages for alleged add-ons of construction.

At the trial, the court listened to testimony from the Pearsons, as well as from employees of Sunset and NALDC. It accepted the original contract and the amended contract into evidence. It further accepted voluminous records and accounting materials detailing the construction costs of the house and the price of the land upon which the home was built. After considering the evidence and testimony, the court filed a written ruling. It thereafter signed a judgment with the following five enumerated points:

(1) Finding that petitioners are not entitled to any damages in this case, for any loss of profits because there is no difference in this case between the contract price of the home and the value of the home on the date of the breach.

(2) Finding that petitioners are entitled to five (5%) percent interest on the amended contract entered into between the parties on the contract price of $528,200.00 from May 8, 2016 until November 8, 2016. The Court specifically finds that petitioners are not entitled to any further interest beyond November 8, 2016.

(3) Finding that petitioners are entitled to legal interest in this case on any judgment that they are awarded, from the date of judicial demand, until paid in full[.]

(4) Finding that petitioners are entitled to an award of reasonable attorney fees in this case in the amount of $10,000.00.

(5) Finding that each party in this matter pay fifty percent (50%) of the total court cost due in this case.

Thereafter, Sunset and NALDC appealed the trial court's ruling and judgment. In their brief to the Court, they were explicit that they only place before this Court for review two alleged errors: (1) the trial court erred in not awarding any interest after the amended closing date; and (2) the court erred in not awarding add-on construction costs.

DISCUSSION

On appeal before us is the question of damages. Neither party appeals the liability of the Pearsons for breach of contract. In fact, the record clearly shows that the breach occurred. Instead, at issue is merely the trial court's interpretation of the contracts at issue, and therefore the consequent award that the trial court's contractual interpretation mandates.

**Contract Interpretation and Contractual Interest**

Sunset and NALDC assert that the trial court erred in its interpretation of the contractual provisions relating to the 5% interest. The original contract in question required that the Pearsons close on the home on or before May 8, 2016. The amended contract extended that closing date to November 8, 2016. In addition to the extension, the Pearsons agreed to pay 5% percent interest on the price of the home from the original date of closing to the new closing date. The trial court ruled that the new closing date was set by the amended contract at November 8, 2016. It found that the contractual interest could therefore not accrue after that date and signed a judgment, calculating the interest to be $13,205.00.

4

Sunset and NALDC argue that the amended "closing date" of the home was the date that the home actually sold, May 8, 2019.  Essentially, Sunset and NALDC contend that because the Pearsons did not close on the home by November 8, 2016, the contractual "closing date" envisioned by the 5% interest became whatever date the home actually sold.  They assert that the trial court erred and that the correct amount of contractual interest should be $52,288.14.

Louisiana is a civil law jurisdiction, owing its legal system to its history as a colony under the influence and rule of France and Spain.  Our legal system is in contrast to that of our neighboring common law states.  Whereas they may look to the courts to provide a significant portion of their law, we look to our Civil Code, enacted by the people through their representatives in the legislature.  Therefore, we must first look to our Civil Code, relying on the mandates of the legislature, and applying them to the situations that come before us.

We are thus reminded of the legislature's clear mandates with regard to contract interpretation.  "Interpretation of a contract is the determination of the common intent of the parties." La. C.C. Art. 2045.  "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. C.C. Art. 2046.  "The words of a contract must be given their generally prevailing meaning." La. C.C. 2047.  "Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract." La. C.C. Art. 2048.  "A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective." La. C.C. Art. 2049.  "Each

provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La. C.C. Art. 2050. "Although a contract is worded in general terms, it must be interpreted to cover only those things it appears the parties intended to include." La. C.C. Art. 2051.

"A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties." La. C.C. Art. 2053. "Equity, as intended in the preceding articles, is based on the principles that no one is allowed to take unfair advantage of another and that no one is allowed to enrich himself unjustly at the expense of another." La. C.C. Art. 2055. "In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text." La. C.C. Art. 2056. "In case of doubt that cannot be otherwise resolved, a contract must be interpreted against the obligee and in favor of the obligor of a particular obligation." La. C.C. Art. 2057.

A strict reading of the original contract in question clearly shows that the parties agreed to a certain, determinable time period for the date of closing. The contract set a time period of "within twelve (12) months from the date of this agreement," which was May 8, 2016. Thereafter, the Pearsons, unable to close by that date, sought an extension with Sunset and NALDC. That extension was granted via the amended contract. The amended contract was also clear that the extended closing date "shall be no later that November 8, 2016."

The language of the amended contact is also unequivocal that "Pearson, in consideration of the aforementioned extension, agrees to pay interest at the rate of five percent (5%) per annum, from May 8, 2016 until the date of closing." From the unambiguous language of the contract along with the testimony and evidence admitted at trial, it is clear that the parties intended to enter into an amended contract that would extend the closing date in exchange for the Pearsons paying interest until they closed on the home.

We cannot find error in the trial court's conclusion that the contracts did not allow for the 5% interest to continue to accrue after the November 8, 2016 date. The Pearsons intent in seeking the extension of the closing date was in order for them to have time to close on their home. The language of the contracts and the testimony of the parties show no intent by the Pearsons to agree to the alleged infinite accrual of interest until the home sold to a third party. They entered into the amended agreement with Sunset and NALDC to extend the closing date range for a finite period, at which they would agree to pay interest for that period. Therefore, we find no error by the trial court in its judgment as regards the contractual interest.

Furthermore, in light of the aforementioned civil code provisions, even if such was in doubt because of ambiguous terms in the contract, we must interpret the contract against the party that furnishes the text. It is undeniable that Sunset and NALDC furnished the contracts and the language within them. Therefore, we find no error by the trial court in its interpretation of the contracts at issue and its award with regard to contractual interest.

We also note the trial court's notion that awarding interest past the date of November 8, 2016, would have amounted to "double-dipping" and unjust enrichment. The trial court referenced that the home ultimately sold for $560,000.00; yet, the maximum contractual amount with the Pearons was $528,200.00. Therefore, Sunset and NALDC realized a profit greater than under the contract with the Pearsons. They were further entitled to the award of interest that accrued prior to November 8, 2016.

**Additional Construction Costs**

Sunset and NALDC contend that the trial court erred in denying their claims for awards related to additional construction costs. The trial court ruled Sunset and NALDC were not entitled to such awards. It found that the maximum costs of the house, regardless of construction, was contractually set at $528,200.00, yet the home eventually sold, as constructed for the Pearsons, for $560,000.00. The court found no loss of profit to Sunset and NALDC. It further found that the contract, capping the home price at $528,200.00 for the Pearsons, disallowed the additional claims of construction costs asserted by the petitioners. We agree.

The contract for the sale of the home to the Pearsons capped the price of the home at no more that $528,200.00. The court was correct to point out that Sunset and NALDC failed to provide any market value of the home at the time of the breach or at the time of the sale of the home. Furthermore, the contract was explicit that the total cost for lot, house and commission could not exceed the sum of $190.00 per square foot. The square footage is shown on the attached Exhibit "A" of the contract. The square footage referenced was 2,780, which calculates out to a total price of no more that $528,200.00. The amended contract does not specify or change the price of

8

the home, except to add the 5% interest in consideration for the extended closing date. Furthermore, the parties did not enter into any other contract detailing additional price adjustments for add-ons. The intent of the parties was to maintain that the maximum price of the entirety of the lot, house, including all construction add-ons, and commission was not to exceed $528,200.00.

## CONCLUSION

The judgment of the trial court is AFFIRMED. All costs of this appeal are assigned to the appellant.